UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARY JULIA HAND, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 7:17-cv-00810-RDP |
| } | |
| UNIVERSITY OF ALABAMA BOARD } | |
| OF TRUSTEES, et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss. (Doc. # 4). The motion to dismiss has been fully briefed and is under submission. (Docs. # 9 & 10). After careful review, and for the reasons explained below, the court concludes that the Motion to Dismiss is due to be granted in part and denied in part.

**I.      Background**

Plaintiff worked for several years as a program manager in the Professional and Conference Services Division (the "Division") at the University of Alabama at Tuscaloosa (the "University"). (*See* Doc. # 1 at ¶ 15). She alleges that she suffered from severe neural foraminal narrowing and compression of a spinal nerve, which she controlled through exercise and use of a special chair before 2013. (*Id.* at ¶¶ 26-27).

In 2013, Plaintiff alleges that Defendant Leroy Hurt, an associate dean of professional development and conference services, pressured her to hire a male candidate for an open position and criticized her for questioning the male candidate during his interview about his salary requirements. (*Id.* at ¶ 18). Moreover, Hurt required Plaintiff to undergo coaching after the

interview. (*Id.* at ¶ 19). In September 2013, Plaintiff complained to the University's EEOC office about gender discrimination because Hurt had hired the lesser-qualified male candidate. (*Id.* at ¶ 21).

In November 2013, Plaintiff alleges that Hurt refused to allow her to terminate a subordinate for poor job performance. (*Id.* at ¶ 22). She asserts that (1) Hurt's refusal undermined her authority and (2) Hurt allowed a non-disabled supervisor to terminate a subordinate for poor job performance. (*See id.* at ¶¶ 22-24). Plaintiff further complains that Hurt ordered her to relinquish planning and control of a conference to another employee with no apparent disabilities. (*Id.* at ¶ 25).

Beginning in April 2014, Plaintiff alleges that Hurt harassed her about exercising in the University's gym during lunch. (*Id.* at ¶ 28). Hurt allegedly directed her to not change clothes at work and to shower before returning to the office. (*Id.*). According to Plaintiff, other employees were allowed to change clothes at the office. (*Id.*). Plaintiff's back conditions worsened in 2014, and she underwent back surgery in December of that year. (*Id.* at ¶ 29). Thereafter, she experienced slurred speech, grasping problems, and drooling, which progressively worsened. (*Id.* at ¶ 30). In February 2015, Hurt complained about Plaintiff's autistic son visiting her office between classes. (*Id.* at ¶ 33). In June 2015, Hurt allegedly directed Plaintiff to relinquish all of her office furniture, including the special chair she needed to alleviate her back condition. (The Complaint does not specify whether Plaintiff lost her ability to use the chair.) (*Id.* at ¶ 32). In August 2015, Plaintiff complained to the University's human resources department that Hurt had "undermined her ability to complete a major project by permitting [Plaintiff's] main support staff person to resign without giving a full two (2)-week notice." (*Id.* at ¶ 35).

In September 2015, Hurt issued Plaintiff a write-up that falsely accused her of yelling at another employee. (*Id.* at ¶ 36). Plaintiff alleges that Hurt threatened to pressure other employees to testify against her if she contested the write-up. (*Id.*). Plaintiff complained to a human resources employee about Hurt's "retaliatory conduct." (*Id.*). According to the Complaint, Hurt permitted a male employee to yell at female employees without any repercussions. (*Id.* at ¶ 37). In September 2015, Hurt also moved another employee, Lisa Dunn, into Plaintiff's office. (*Id.* at ¶ 38).

In October 2015, Hurt demoted plaintiff from program manager to sales manager.[1] (*Id.* at ¶ 39). Plaintiff complained to Defendants Craig Edelbrock and Hurt that she would likely not succeed as a sales manager due to her slurred speech, her limitations in moving her right leg, and after-effects from her back surgery. (*Id.* at ¶ 41). Plaintiff's slurred speech harmed her ability to make telephone sales calls, and her lack of mobility impeded her ability to conduct in-person sales calls. (*Id.* at ¶ 45). According to Plaintiff, Hurt failed to inform her of fundraising protocols, which impeded her fundraising efforts. (*Id.* at ¶¶ 52-53). At one point following her demotion, Hurt limited Plaintiff's fundraising "to selling at exhibit booths and seeking low-level sponsors under $10,000, which were already being handled in the Marketing Department." (*Id.* at ¶ 54). Hurt later instructed Plaintiff to focus on securing grants, rather than making sales. (*Id.* at ¶ 56). In August 2016, Plaintiff submitted a draft proposal for a grant from the Department of Health and Human Services, but Hurt decided to appoint another person to handle that grant application. (*Id.* at ¶ 57). Plaintiff began treatment for Parkinson's Disease in December 2016 and was diagnosed with Parkinson's in January 2017. (*Id.* at ¶ 59). Thereafter, she informed Hurt of the diagnosis. (*Id.*).

---

[1] Plaintiff characterizes the new position as a demotion because she lost supervisory duties and job responsibilities, and Hurt's organizational chart placed her at the bottom of the Division. (Doc. # 1 at ¶ 46).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136,

138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.   Analysis

In her Complaint, Plaintiff raises three counts against Defendant Board of Trustees: (1) sex discrimination and harassment claims under Title VII of the Civil Rights Act of 1964; (2) disability discrimination, harassment, and failure-to-accommodate claims under Section 504 of the Rehabilitation Act; and (3) retaliation claims under Title VII and the Rehabilitation Act. Plaintiff asserts state-law claims against Defendants Edelbrock and Hurt for negligence and interference with contractual or business relations. The court addresses the sufficiency of the allegations related to each claim below, in turn.

### A.   Plaintiff's Complaint States Plausible Allegations of Title VII Sex Discrimination

Defendants argue that Plaintiff's Complaint does not state a Title VII discrimination claim because it fails to plead a prima facie case of discrimination, identify a male comparator, and explain how similarly situated males received more favorable treatment. (Doc. # 4 at 8-10). After review, the court finds that the Complaint contains sufficient detail about Plaintiff's demotion and work environment to present plausible disparate treatment and hostile work environment claims.[2]

---

[2] Ideally, Plaintiff's Complaint would have separated the disparate treatment and harassment claims into separate counts. Although Defendants have not objected to the format of the Complaint, in the interest of clarity and to avoid any shotgun pleading, the court will instruct Plaintiff to amend her Complaint below.

5

In a Title VII disparate treatment case, a plaintiff does not need to allege facts in the complaint "sufficient to make out a classic *McDonnell Douglas* prima facie case." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008), *abrogated on other grounds by Iqbal*, 556 U.S. 662. A Title VII plaintiff need only "provide 'enough factual matter (taken as true) to suggest' intentional [sex] discrimination." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Plaintiff's Complaint provides factual allegations, above and beyond the mere recital of elements, to suggest that the Board of Trustees discriminated against her on the basis of sex when she was demoted from program manager to sales manager.[3] She has alleged that approximately one month prior to the demotion Hurt issued a false write-up to her for yelling at an employee but allowed a male employee to yell at female employees without punishment. (Doc. # 1 at ¶¶ 36-37). Moreover, she has described another situation where Hurt hired a lesser-qualified male candidate over a more-qualified female candidate and criticized Plaintiff's assertiveness towards the male candidate. (*Id.* at ¶¶ 18, 21). While this incident occurred a few years prior to Plaintiff's demotion, it suggests there is circumstantial evidence that Hurt discriminates towards females. *Cf. Castillo v. Allegro Resort Marketing*, 603 F. App'x 913, 917-19 (11th Cir. 2015) (reversing a district court's dismissal of a Title VII claim where a supervisor had stated that he wanted to give the plaintiff's job to a "young boy" because that allegation, along with others, "could, through discovery, yield circumstantial evidence of intentional

---

[3] Plaintiff sufficiently alleges that the transfer constituted a demotion because it reduced her job responsibilities, foreclosed opportunities for advancement, and eliminated her supervisory role. (Doc. # 1 at ¶ 46). *See Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) ("Where a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, *or diminishment of responsibilities*, for example, a court normally has no cause to consider its standard for adversity; the relevant question in such cases is whether such patently adverse actions actually took place.") (emphasis added).

6

discrimination"). Plaintiff's allegations, if true, raise an inference that she was demoted because of her sex.[4]

Defendants also insist that Plaintiff's disparate treatment claim fails due to the lack of an alleged male comparator who was treated more favorably. But this argument clearly misses the mark. In some circumstances, a plaintiff can establish a prima facie Title VII case without showing the existence of a comparator. *See Walker v. Love's Travel Ctr.*, 2017 WL 4931693, at *2 (S.D. Ala. Oct. 31, 2017) (explaining that allegations about a comparator are unnecessary at the motion to dismiss stage because a plaintiff can establish a prima facie Title VII claim at the summary judgment stage without reference to a comparator). Here, after careful review, the court is satisfied that Plaintiff's factual allegations provide enough information to suggest the purported demotion resulted from sex discrimination.

**B.     The Complaint States Plausible Allegations of a Hostile Environment**

Defendants also argue that Plaintiff's Complaint fails to state a Title VII hostile environment claim. To state such a claim, Plaintiff must show that because of her sex "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of … employment and create an abusive working environment.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (quoting *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012)). To prove a claim of hostile work environment under Title VII, an employee must show: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee …; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a

---

[4] Plaintiff also contends she applied for another program manager position, interviewed for the position, but lost the position to a male employee after the division's director regularly met with Hurt. (Doc. # 1 at ¶ 49).

discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Courts commonly consider four factors in determining whether the conduct at issue is severe or pervasive enough to permeate a workplace: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1276.

Here, although it is a close call, Plaintiff has sufficiently pled a plausible hostile environment claim. She claims that Hurt criticized her assertiveness for questioning a male applicant about his pay requirements and directed her to complete coaching thereafter. (Doc. # 1 at ¶¶ 18-19). Moreover, she asserts that Hurt denied her the ability to terminate an underperforming subordinate, "whereas he did not undermine the authority of similarly-situated males." (*See id.* at ¶¶ 22, 70). As stated above, Plaintiff received a write-up based on yelling at a subordinate when a male colleague received no punishment for similar conduct. (*Id.* at ¶¶ 36-37). And, after Plaintiff's demotion to sales manager, Hurt continually assigned her to different sales and fundraising responsibilities -- some of which were redundant -- and on at least one occasion foreclosed her from applying for a grant. (*See id.* at ¶¶ 51-54, 56-58). The allegations regarding Hurt's interference with Plaintiff's supervisory responsibilities and his treatment of her following the demotion raise the possibility that the harassment was so extreme that it produced tangible effects on her job performance.[5] *See Miller*, 277 F.3d at 1276. Therefore, the court finds Plaintiff has presented plausible allegations in the Complaint that indicate Plaintiff was

---

[5] Defendants' Motion to Dismiss offers no specific challenge to Plaintiff's membership in a protected group or the Board of Trustees' responsibility for the alleged hostile environment. *Miller*, 277 F.3d at 1275.

subjected to severe and pervasive harassment, and the Title VII hostile work environment claim is not due to be dismissed.[6]

### C. The Complaint States Plausible Claims under Section 504 of the Rehabilitation Act

Defendants contend that Plaintiff's disability discrimination claim is insufficient because, in her Complaint, she does not explain the differences between the program manager position -- which she characterizes as a reasonable accommodation for her disabilities -- and the sales manager position. (Doc. # 4 at 10). Plaintiff responds that the Complaint states all the elements of a disability discrimination claim. (Doc. # 9 at 8-9). For the reasons explained below, the court agrees with Plaintiff that the Rehabilitation Act claims are due to go forward.

As an initial matter, Defendants' Motion to Dismiss does not challenge the sufficiency of any hostile work environment claim under the Rehabilitation Act. (*See* Doc. # 4 at 10) (discussing the deficiencies in a failure-to-accommodate claim). While such a claim should have been presented in a separate count of the complaint, the court finds that the hostile work environment claim presented in Count Two of the Complaint is not due to be dismissed at this time.

The Rehabilitation Act generally prohibits any program or activity receiving federal funds from discriminating against otherwise qualified individuals with a disability. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *see also* 29 U.S.C. § 794(a). Because the Rehabilitation Act shares a liability standard with the Americans with Disabilities Act ("ADA"), claims under the Rehabilitation Act are evaluated in the same manner as those under the ADA. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). To establish a prima facie disparate treatment claim under the Rehabilitation Act, a plaintiff must show that "(1) [s]he has a

---

[6] Of course, the court states no opinion as to whether, ultimately, Plaintiff will be able to present substantial evidence of a hostile work environment. *See* Fed. R. Civ. P. 56.

disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of [her] disability." *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). Plaintiff's Complaint presents plausible allegations that Defendant committed such disparate treatment when demoting Plaintiff from program manager to sales manager.

Here, Plaintiff has alleged that her neural foraminal narrowing and Parkinson's Disease were disabilities that substantially limited one or more of her bodily functions. (Doc. # 1 at ¶¶ 80-81). Defendants have not contested that claim at this stage of the proceedings. (*See* Doc. # 4 at 10-11). Plaintiff has alleged she was able to perform the essential functions of the program manager position without any accommodation. (*Id.* at ¶ 87). And, according to Plaintiff, Hurt demoted her to program manager and transferred her former responsibilities to less qualified, non-disabled employees. (*Id.* at ¶¶ 89, 91). At a minimum, these allegations set forth a plausible disparate treatment disability discrimination claim. *Cf. Sutton*, 185 F.3d at 1207.

Defendant's Motion to Dismiss primarily attacks Plaintiff's failure-to-accommodate claim. To establish a prima facie case of failure to accommodate under the Rehabilitation Act, a plaintiff "must show that: (1) she was disabled; (2) she was a qualified individual; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *Skotnicki v. Bd. of Trustees of the Univ. of Ala.*, 631 F. App'x 896, 903 (11th Cir. 2015). Plaintiff contends that her program manager job constituted a reasonable accommodation for her disabilities, and Defendant should have reasonably accommodated her by keeping her in that position. (Doc. # 1 at ¶¶ 87, 89). And, she has explained that her slurred speech and lack of mobility impaired her ability to perform the essential functions of a sales manager. (*See id.* at ¶¶ 41-42). She informed Defendants Hurt and Edelbrock about these limitations. (*See id.*). While the court recognizes this claim presents a close call (*e.g.*, Plaintiff's

allegations do not specify whether she struggled with the functions of a sales manager after the alleged demotion, and she worked as a sales manager for at least a year and a half before filing suit), the court finds that Defendant's objections to the claim are best suited for the summary judgment stage, where the court will have the benefit of a Rule 56 record. Therefore, Defendant's motion to dismiss the failure-to-accommodate claim in Count Two is due to be denied.

### D. Defendant's Summary Objection to Plaintiff's Retaliation Claims is Denied

In the Motion to Dismiss, Defendants argue that the retaliation claims are due to be dismissed because the Complaint offers nothing more than "naked assertions devoid of further factual enhancement." (Doc. # 4 at 8) (quoting *Iqbal*, 556 U.S. at 678). A careful review of the Motion to Dismiss reveals, though, that Defendants offer no argument discussing which elements of retaliation Plaintiff fails to allege. (*See id.* at 8-11). Indeed, Plaintiff alleges in her Complaint that she complained to the University's EEOC representative, a support staff supervisor, and the University's human resources department on several occasions (Doc. # 1 at ¶¶ 21, 23, 33, 36), and that she faced retaliatory conduct thereafter (*id.* at ¶¶ 42, 53). This aspect of the motion to dismiss is due to be denied.

### E. Plaintiff's Negligence Count Against Edelbrock and Hurt Fails to State a Viable Claim

In her Complaint, Plaintiff alleges that Edelbrock and Hurt negligently hired unqualified employees, negligently failed to train the employees who violated her rights under Title VII and the Rehabilitation Act, and negligently failed to administer the University's anti-discrimination, anti-harassment, and anti-retaliation policies. (Doc. # 1 at ¶¶ 112, 114, 116). Defendants argue that the negligence claims cannot go forward because (1) supervisory employees are not liable

for negligent hiring, training, or supervision, and (2) the negligence claim merely recasts Plaintiff's federal-law claims into state-law torts. (Doc. # 4 at 5-6).

Plaintiff's negligence claims, which are premised on negligent training, supervision, and hiring of subordinates, are primarily due to be dismissed because Alabama law does not recognize a cause of action against a supervisor for that supervisor's negligent training or supervision of a subordinate. *See, e.g.*, *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1312 (S.D. Ala. 2011) ("Alabama law does not recognize a cause of action against a municipality or supervisor for negligent training or supervision."); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314-15 (S.D. Ala. 2001) (dismissing a negligent retention, training, and supervision claim against a municipality because "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate" since a supervisor has no master-servant relationship with his or her subordinate).[7] In addition, Plaintiff's negligent training, supervision, and hiring claims fail because Plaintiff has identified no underlying Alabama tort committed by a subordinate. "In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). *See also Shuler v. Ingram & Assocs.*, 441 F. App'x 712,

---

[7] The court concludes that *Ott*'s holding regarding negligent training and supervision claims is unaffected by the Alabama Supreme Court's opinion in *Ex parte City of Montgomery*, 99 So. 3d 282 (Ala. 2012). The latter opinion addressed, in relevant part, whether a municipality is liable for negligent hiring, training, and supervision claims. 99 So. 3d at 299. The City contested the plaintiffs' negligence claims on the basis of peace-officer immunity under Alabama law. *Id.* at 298-99. Alabama's peace-officer immunity statute shields a municipality from liability if the employed officer is entitled to such immunity as well. *See id.* The Court denied the City summary judgment based on peace-officer immunity because the City did not identify the officers responsible for hiring, training, and supervising the police officers responsible for the tortious conduct presented. *Id.* at 299. Notably, the City did *not* "argue that Alabama law recognizes no cause of action against a non-employer supervisor for negligent training or supervision." *Robinson v. Brassel*, 2017 WL 2437265, at *14 n. 27 (S.D. Ala. June 5, 2017) (mentioning this unraised argument in *Ex parte City of Montgomery*). Because the Alabama Supreme Court never addressed whether negligent hiring, training, and supervision claims can be brought against mere supervisors, the court concludes that *Ex parte City of Montgomery* cannot be read to approve the viability of such a negligence theory.

720-21 (11th Cir. 2011) (citing *Thrasher* in support of this rule). Because Alabama law provides no common-law tort claim for sex or disability discrimination in employment, Plaintiff cannot maintain a negligent hiring, supervision, or training claim premised on sex or disability discrimination committed by a subordinate.[8] *Thrasher*, 195 F. Supp. 2d at 1320. Because Defendants Edelbrock and Hurt are not proper defendants for this category of negligence claims, and because Plaintiff has not alleged an underlying Alabama tort committed by the subordinate employees,[9] Plaintiff's negligence count fails to state a claim upon which relief can be granted and is due to be dismissed.

### F. Plaintiff's Count for Interference with Contractual or Business Relations Fails to State a Viable Claim

Plaintiff next claims that Defendants Edelbrock and Hurt sought to harm her professional reputation by placing her in a false light. (*See* Doc. # 1 at ¶¶ 122-24). The protectable business relationships alleged by Plaintiff are her "established business relationships with her coworkers and colleagues." (*Id.* at ¶ 121). Defendants argue that this count is due to be dismissed because

---

[8] A negligent hiring, training, or supervision claim premised on a subordinate's *age* discrimination is distinguishable from Plaintiff's negligence claim here because Alabama law expressly prohibits age discrimination in employment in the Alabama Age Discrimination in Employment Act. *See King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1269 (N.D. Ala. 2014).

The court also recognizes that Alabama law allows for negligent training and supervision claims against employers where the underlying conduct is sexual harassment, even though there is no independent cause of action for sexual harassment. *See, e.g.*, *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 825 n. 6 (Ala. 1999). Although Plaintiff has alleged she suffered from a hostile work environment and harassment because of her sex, the court finds the harassment allegations here are not analogous to the types of sexual harassment for which Alabama courts have allowed plaintiffs to pursue negligent training and supervision claims. *E.g.*, *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1001-04 (Ala. 1993) (negligent training and supervision claim premised on an employee forcing a customer to engage in a sex act), *abrogated on other grounds as recognized in Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001).

[9] Plaintiff argues that the Complaint pleads an additional Alabama tort claim for interference with contractual or business relations, but Count Four of the Complaint does not state that Edelbrock's or Hurt's subordinates interfered with Plaintiff's contractual or business relations. (*See* Doc. # 1 at ¶ 114) (alleging that Defendants' subordinates violated Plaintiff's Title VII and Rehabilitation Act rights). And, Plaintiff's tort claim for interference with contractual or business relations is based on Defendants' conduct, not the conduct of their subordinates. (*See id.* at ¶¶ 120-26).

they were not strangers to the relationships with which they purportedly interfered. (Doc. # 4 at 7). For the reasons explained below, the court agrees with Defendants.

"In Alabama, the elements of the tort of wrongful interference with business relations are: (1) the existence of a protectable business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Tang v. Vaxin, Inc.*, 2016 WL 892757, at *10 (N.D. Ala. Mar. 9, 2016) (citing *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)). A party is not a stranger to a business relationship if he or she has "any beneficial or economic interest, or control over, the relationship." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) (quoting *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003)). According to the Eleventh Circuit, "[w]hen the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (citing *Tom's Foods*, 896 So. 2d at 455, among other authorities). For example, both a restaurant and an owner of that restaurant are essential parties to any business relationship between the servers in that restaurant because the restaurant has an economic interest in the servers' relationship and the servers would have no relationship but for being hired by the restaurant. *Id.* at 1302-03. Likewise, it is readily apparent that the University is an essential party to the business relationships between Plaintiff and her coworkers and colleagues.

Alabama law permits a plaintiff to maintain a claim of interference with business relations against an individual officer or employee with regard to "business or contractual relations to which their corporation or employer is a party." *Perlman v. Shurett*, 567 So. 2d 1296, 1297 (Ala. 1990) (quoting *Hickman v. Winston Cty. Hosp. Bd.*, 508 So. 2d 237, 239 (Ala.

1987)). But, such an intentional interference claim is only viable where the officer or employee "act[ed] outside their scope of employment and [acted] with actual malice." *Id.* (quoting *Hickman*, 508 So. 2d at 239). When an officer or employee "acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation," and the officer or employee cannot be held liable for interference with business relations if the corporation cannot be held liable for that tort. *Id.* (quoting *Hickman*, 508 So. 2d at 239, which quoted in turn *Wampler v. Palmerton*, 439 P. 2d 601, 607 (Ore. 1968)). Here, Plaintiff has not specified how or when Defendants Hurt and Edelbrock acted outside their scope of employment as, respectively, an associate dean of professional development and conference services and the dean of the University's College of Continuing Studies Leadership. (*See* Doc. # 1 at ¶¶ 7-8, 120-26). Moreover, Plaintiff has not indicated that the Defendants instituted a pattern of conduct that was outside their scope of employment, such as repeatedly spreading fabrications about Plaintiff to her colleagues. *Cf. Golloway v. Bd. of Trustees of Auburn Univ.*, 2017 WL 4011020, at *3 (M.D. Ala. Sept. 12, 2017) (denying a Rule 12(b)(6) dismissal of a tortious interference claim where the plaintiff alleged that the defendants maneuvered to have the plaintiff terminated by Auburn University, his employer). Without these allegations, Plaintiff cannot state a plausible interference with business relations cause of action against Hurt and Edelbrock. *See generally Perlman*, 567 So. 2d 1296.

Alternatively, Plaintiff's interference count is due to be dismissed at this stage because she has not specified which business relationships were damaged by Defendants' conduct. Unlike the Title VII and Rehabilitation Act claims described above, the court finds that the lengthy allegations in the Complaint's Statement of Facts fail to provide fair notice to Defendants of which business relationships were harmed by their alleged conduct. Thus, in the

15

alternative, Plaintiffs' interference count is due to be dismissed without prejudice for failure to allege which protectable business relationships were harmed.

### G. Plaintiffs' Request for Punitive Damages From the Board of Trustees is Due to be Dismissed

Defendants argue that Plaintiff cannot recover punitive damages from the Board of Trustees. (Doc. # 4 at 11). Plaintiff concedes that she is not entitled to punitive damages from the Board of Trustees. (Doc. # 9 at 10). Accordingly, without objection, her request for punitive damages is due to be dismissed.

## IV. Conclusion

For the reasons explained above, Defendants' Motion to Dismiss (Doc. # 4) is due to be granted in part and denied in part. The motion is due to be denied with respect to Counts One, Two, and Three of the Complaint. Counts Four and Five of the Complaint, alleging negligence and interference with contractual and business relations, are due to be dismissed without prejudice for failure to state a claim. Defendants Edelbrock and Hurt are due to be dismissed from this case. Plaintiff's request for punitive damages from Defendant Board of Trustees is also due to be dismissed. Finally, in the interest of clarity and to avoid any shotgun pleading, the court will direct Plaintiff to separate each theory of relief under Title VII and the Rehabilitation Act (*e.g.*, disparate theory discrimination, hostile work environment, failure to accommodate) into a separate count of an Amended Complaint. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 11, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE